**CLAY COUNTY, Kentucky, and Fiscal Court of Clay County, Kentucky, et al., Appellants,**

v.

**LESLIE COUNTY, Kentucky, and Fiscal Court of Leslie County, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 12, 1975.

John D. White, Manchester, for appellants.

Robert C. Muncy, Hyden, William S. Riley, Asst. Atty. Gen., Thomas A. Duke, Dept. of Revenue, Frankfort, for appellees.

CULLEN, Commissioner.

By KRS 143.020, enacted in 1972, Kentucky levies a "severance tax," relating to coal, "on every taxpayer measured by the coal severed." The tax is at the rate of four percent of the gross value of the coal severed but not less than thirty cents per ton. By KRS 143.010, "severance" is defined to mean "the physical removal of coal from the earth," and "taxpayer" is defined to mean any person "engaged in severing coal."

Provision is made in KRS 42.300, enacted in 1974, for allocation of a portion of the total state-wide severance-tax collections among the "coal producing counties," on the basis of the "ratio of the severance tax collected in a county to the total amount of severance tax collected statewide." (The amount to be allocated for the fiscal years 1974–75 and 1975–76 was determined by Chapter 262 of the Acts of 1974).

A substantial amount of coal is taken, by underground mining, from coal seams located in Leslie County, but the mouths of the mines, through which the coal is brought to the *surface* of the ground, are located in Clay County. The weighing, washing, crushing, other processing, and shipping take place in Clay County.

A dispute arose between Leslie County and Clay County as to allocation of the severance tax, Leslie County maintaining that the coal taken from seams in Leslie County was severed in that county and therefore was collected in that county, while Clay County maintained that the severance did not take place until the coal came from the mine mouths in Clay County, wherefore the tax was collected in Clay County. To settle the dispute, the appropriate state officials brought the instant suit for a declaratory judgment. The circuit court was of the opinion that the severance took place in Leslie County and entered judgment accordingly. Clay County appeals from that judgment.

Clay County's argument is that "physical removal of the coal from the earth" (the statutory definition of "severance") means the bringing of the coal *to the surface* of the earth; that this is the only practicable meaning since the tax is calculated by weight and weighing is not done until the coal is brought out of the mine; and that since maintenance of roads and bridges is one of the major purposes for which a part of the severance tax is allocated to the counties, the legislature reasonably would have intended that the allocation be to the counties over whose roads and bridges the coal is transported, which normally are the counties in which are located the mouths of the mines.

Leslie County's argument is that "physical removal of the coal from the earth" means the parting of the coal from the earth in which it has been imbedded, so that it becomes personalty (which takes place inside the mine); that KRS 42.300 provides in terms for allocation of the tax among the "coal producing counties," which plainly means the counties where the seams of coal are located; and that the legislative intent in the allocation of the tax was to compensate the latter counties for the depletion of their natural resources.

The circuit court was persuaded of the validity of Leslie County's argument, and so is this court.

The judgment is affirmed.

All concur.